# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **KATARINA KEMPER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No:** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **HCA MANAGEMENT SERVICES,** | ) | |
| **L.P. and HCA HEALTHCARE, INC.,** | ) | |
| | ) | **JURY DEMAND** |
| **Defendants.** | ) | |
| | ) | |

## COMPLAINT

Plaintiff Katarina Kemper, by and through counsel, brings this Complaint against Defendants HCA Management Services, L.P. and HCA Healthcare, Inc., and alleges as follows:

## JURISDICTION & VENUE

1. This is a sex discrimination, harassment, and retaliation case under Title VII of the Civil Rights Act of 1964, as amended, ("Title VII"), 42 U.S.C. § 2000e, *et seq*., and the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101, *et seq.*

2. This Court has original subject matter jurisdiction of this action pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1331. The Court has supplemental jurisdiction over THRA claims pursuant to 28 U.S.C. § 1367, as the claims are so related to the claims with original jurisdiction that they form part of the same case or controversy.

3. The employment practices alleged to be unlawful were committed within Davidson County, Tennessee; therefore, proper venue for this action lies within the Middle District of Tennessee pursuant to 28 U.S.C. § 1391.

## ADMINISTRATIVE PREREQUISITE

4.      Ms. Kemper has fulfilled all conditions precedent to the institution of this action under 42 U.S.C. § 2000e, *et seq*. A "Determination and Notice of Rights" letter was issued by the U.S. Equal Employment Opportunity Commission ("EEOC") on March 14, 2023, a true and correct copy of which is attached hereto as Exhibit A.

## PARTIES

5.      Plaintiff Katarina Kemper ("Ms. Kemper") is a resident of Tennessee who resides in Robertson County.

6.      At all relevant times, Ms. Kemper was an "employee" of Defendants within the meaning of Title VII, 42 U.S.C. § 2000e(f) and the THRA.

7.      At all relevant times, Defendants have continuously been doing business in Tennessee, with their principal offices located at 1 Park Plaza, Nashville, TN 37203-6527.

8.      Defendant HCA Healthcare, Inc. ("HCA Healthcare") is a Delaware corporation headquartered in Nashville, Tennessee. HCA Healthcare may be served with process through its Tennessee registered agent: C T Corporation System, 300 Montvue Road, Knoxville, TN 37919-5546.

9.      Defendant HCA Management Services, L.P. ("HCA Management") is a Delaware limited partnership headquartered in Nashville, Tennessee. HCA Management may be served with process through its Tennessee registered agent: C T Corporation System, 300 Montvue Road, Knoxville, TN 37919-5546.

10.     At all relevant times, Defendants—individually and collectively—have continuously had at least 15 employees.

11.     Upon information and belief, HCA Management Services, L.P. is owned or

2

otherwise controlled by HCA Healthcare, Inc. and its affiliated entities.

12.     At all relevant times HCA Healthcare and HCA Management (collectively referred to hereinafter as "Defendants") were the "employer" (including the joint or single employer) of Ms. Kemper under Title VII.

13.     Upon information and belief, Defendants operate as a joint employer. HCA Management and HCA Healthcare share in drafting and controlling all corporate policies and procedures, including employment-related policies and implementation of such policies and procedures in the workplace, and HCA Healthcare has authority to remove or terminate employees from job assignments or otherwise affect the terms and conditions of their employment.

## **RELEVANT FACTS**

14.     Defendants together operate as "HCA Healthcare," one of the nation's leading for-profit providers of healthcare services.

15.     According to its website, HCA Healthcare is comprised of 182 hospitals and 2,300+ sites of care in 20 states and the United Kingdom.

16.     HCA Healthcare has over 283,000 employees and annual revenues exceeding 90 billion dollars ($90,000,000,000.00).

17.     Ms. Kemper began working for Defendants at Rose Medical Center ("RMC") in Denver, Colorado in around February 2005.

18.     RMC is part of HCA Healthcare's network of facilities.

19.     At RMC, Ms. Kemper thrived and rose through the ranks from Quality Coordinator to Quality & Risk Manager and lastly to Director of Risk, Safety, Security & Emergency Preparedness.

3

20.    In 2014, after some of Defendant's corporate leaders witnessed Ms. Kemper's exceptional work and leadership abilities onsite at RMC, Defendants recruited her for a promotion at Defendant's corporate headquarters located in Nashville, Tennessee.

21.    At the time of her recruitment, Defendants were displeased with their existing corporate Security Department, including ongoing IT and camera installation issues.

22.    In September 2014, Ms. Kemper began working as Defendants' corporate Director of Security.

23.    At all relevant times, Ms. Kemper performed her duties in a satisfactory and competent manner.

24.    Former Supervisor Tim Portale frequently complimented Ms. Kemper's job performance.

25.    Chief Security Officer Paul Connelly also frequently complimented Ms. Kemper's job performance.

26.    Unfortunately, throughout much of her coporate-based employment, Defendants' Director of Security Staffing Operations, Kevin Cleveland, frequently harassed and berated Ms. Kemper and other female employees based on their sex, including referring to Ms. Kemper as a "pretty little ego" in an email, and asking if she was pregnant.

27.    Mr. Cleveland sent hostile emails to Ms. Kemper and other female employees, and belittled them during department meetings.

28.    As one example, when Ms. Kemper asked Mr. Cleveland questions in department meetings, he would often direct his answers to male colleagues instead of addressing Ms. Kemper directly.

29.    Mr. Cleveland did not act in this hostile and harassing manner with male employees.

4

30.    Ms. Kemper and other female employees repeatedly reported Mr. Cleveland's caustic behavior toward female employees to management.

31.    Defendants had a duty to take prompt corrective action to prevent Mr. Cleveland's discrimination and harassment.

32.    Defendants' managers, including Mr. Portale and Mr. Connelly, refused to discipline Mr. Cleveland, and his misconduct continued.

33.    Defendants' inaction was consistent with a pattern by Defendants of discounting and dismissing female employees's ideas, contributions, and workplace concerns.

34.    In 2020, Ms. Kemper was eligible for a promotion to Vice President.

35.    Ms. Kemper was selected as one of the final candidates for the VP position.

36.    During the months leading up to Defendants' final selection decision, Mr. Connelly told Ms. Kemper that "[she] could do nothing differently."

37.    Ms. Kemper went through two rounds of interviews for the VP role.

38.    On about December 24, 2020, Mr. Connelly informed Ms. Kemper that Defendants selected a male candidate, Kent Petty, for the VP position.

39.    As justification for her non-selection, Mr. Connelly told Ms. Kemper on a phone call that he did not think HCA was ready for a female to be the face of the Secuirty Department.

40.    Defendants did not promote Ms. Kemper because of her sex.

41.    Instead, Mr. Petty, a less qualified male, received the position.

42.    At the time of his hire, Mr. Petty had no healthcare security experience with Defendants and did not understand how Defendants' Security Department operated.

43.    Mr. Petty did not know how to perform many of the VP position's job duties.

44.    Mr. Petty told Ms. Kemper that he was "shocked" she did not receive the promotion.

5

45.     Because Mr. Cleveland's harassment continued during this time, Ms. Kemper complained about it to Mr. Petty.

46.     However, Mr. Petty took no action in response to Ms. Kemper's concerns.

47.     Mr. Petty told one female employee that her opposition to Mr. Cleveland's harassment was "emotional," which deterred Ms. Kemper and other female employees from reporting their concerns.

48.     Meanwhile, Mr. Petty frequently failed to communicate with the Security team, including Ms. Kemper, and did not schedule regular department meetings.

49.     Mr. Petty proved incapable of leading the Security team. During one meeting, he impliedly threatened Ms. Kemper and other subordinates, stating something to the effect of, 'You don't know who I am or what I've done. I've killed people.'

50.     When Ms. Kemper tried to invite Mr. Petty to breakfast or lunch to help build rapport and work through any ongoing Security issues, Mr. Petty declined.

51.     Still, Mr. Petty relied on Ms. Kemper to develop the Security Department's annual budgets and strategic plans, among other VP-level tasks.

52.     In around February 2022, Ms. Kemper's presentation of program data to Defendants' executive leadership led to the Security Department receiving an additional $30 million in funding, including funds for additional staff.

53.     Ms. Kemper received several congratulatory praises for her efforts.

54.     Unfortunatley, despite receiving no formal discipline during her corporate career, Defendants retaliated against Ms. Kemper for raising her discrimination and harassment concerns.

55.     On about March 9, 2022, Defendants abruptly terminated Ms. Kemper's employment due to alleged performance issues.

6

56.     Defendants' reasons for Ms. Kemper's termination are false.

57.     Defendants terminated Ms. Kemper because of her sex and opposition to sex-based discrimination and harassment.

58.     Defendants also subjected Ms. Kemper to an ongoing hostile work environment because of Mr. Cleveland's actions, and the failure of Defendants' managers to take prompt corrective action to stop the harassment.

59.     After Ms. Kemper's termination, Defendants offered her severance pay in exchange for her releasing legal claims against them.

60.     The original separation agreement did not contain any restrictions on Ms. Kemper's possible future reemployment with Defendants.

61.     However, after Ms. Kemper raised some of the Title VII claims discussed herein, Defendants insisted upon a separation agreement containing a lifetime employment ban.

62.     Defendants' actions leading up to and including inclusion of the lifetime employment ban were taken because Ms. Kemper asserted claims protected by Title VII.

63.     On July 15, 2022, Ms. Kemper filed a charge of discrimination with the EEOC alleging sex discrimination, failure to promote, hostile work environment, and retaliation (specifically including inclusion of the lifetime employment ban).

64.     During the pendency of her Charge of Discrimination before the EEOC, Ms. Kemper applied for a Program Director position with Defendants.

65.     Ms. Kemper was well qualified for the position.

66.     Ms. Kemper received a first-round interview for the Program Director position.

67.     After a successful first interview, Defendants' representative, Randal Donaldson, stated Ms. Kemper would progress to the second round of interviews.

7

68.     However, before participating in the second interview round, Ms. Kemper received an email rejecting her for the position.

69.     Upon information and belief, the position remained open and Defendants hired a less qualified individual, who had not engaged in protected activity against Defendants.

70.     Defendants failed to hire Ms. Kemper for the Program Director position because of Ms. Kemper's protective activity, including filing an EEOC Charge of Discrimination against Defendants.

**CAUSES OF ACTION**
**Violations of Title VII and the THRA**
**(Sex Discrimination, Hostile Work Environment, Retaliation)**

71.     Ms. Kemper re-alleges the foregoing paragraphs as though fully set forth herein.

72.     Title VII and the THRA make it unlawful for employers to discriminate against any individual with respect to her terms, conditions, or privileges of employment, because of such individual's sex.

73.     As described above, Defendants discriminated against Ms. Kemper in the terms, conditions, and privileges of her employment, including, but not limited to, refusing to promote her, and subjected her to disparate treatment because of her sex in violation of Title VII and the THRA.

74.     As described above, Defendants subjected Ms. Kemper to a hostile and abusive work environment, including severe or pervasive harassment, that altered the conditions of her employment because of her sex in violation of Title VII and the THRA.

75.     As described above, Defendants retaliated against Ms. Kemper because of her opposition to and reports and complaints about sex-based discrimination in violation of Title VII and the THRA, including, but not limited to, her termination, the inclusion of the lifetime

employment ban in the separation agreement, and failing to hire Ms. Kemper for the Program Director position after she filed a Charge of Discrimination.

76.     Defendants' conduct as described in this Complaint was malicious and/or recklessly indifferent to Ms. Kemper's federally protected rights, entitling her to punitive damages under Title VII and the THRA.

77.     As a direct result of Defendants' discriminatory and retaliatory conduct, Ms. Kemper has lost income and other privileges and benefits of employment; suffered embarrassment, humiliation, emotional distress and anxiety, inconvenience, and loss of enjoyment of life; and has incurred attorneys' fees, costs and litigation expenses.

## RELIEF REQUESTED

WHEREFORE, Ms. Kemper respectfully requests:

1. A jury trial;

2. Back pay and damages for lost benefits;

3. Compensatory damages for embarrassment, humiliation, emotional distress and anxiety, inconvenience, and loss of enjoyment of life;

4. Front pay and damages for lost benefits;

5. Punitive damages;

6. Attorneys' fees, costs and litigation expenses;

7. Prejudgment interest and, if applicable, post judgment interest; and

8. Such other and further legal or equitable relief to which she may be entitled.

9

Respectfully submitted,


s/ *Curt M. Masker*
Curt M. Masker (BPR No. 37594)
RICKARD MASKER, PLC
810 Dominican Drive, Suite 314
Nashville, Tennessee 37228
Tel: (615) 270-2098
Fax: (615) 821-0632
curt@maskerfirm.com

*Attorney for Ms. Kemper*